IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NetJets Aviation, Inc.,

    Plaintiff,

  v.                              Case No. 2:05-cv-1049

International Brotherhood
of Teamsters, Airline Division,
et al.,

    Defendants.

### OPINION AND ORDER

This is an action filed pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §151 et seq. by plaintiff NetJets Aviation, Inc. ("NetJets") against the International Brotherhood of Teamsters, Ariline Division and the International Brotherhood of Teamsters, Local 1108 ("the Union"). NetJets is a Delaware corporation which operates a charter airline service. NetJets is a common carrier within the jurisdiction of the RLA.

The complaint seeks to vacate an arbitration award finding that NetJets violated the collective bargaining agreement between NetJets and the Union ("the Agreement"), attached as Exhibit A to the complaint. The arbitration ultimately decided the issue of whether NetJets violated the Agreement by failing to provide pilots on the "7&7 Schedule" with seven consecutive days off between tours following an after-midnight arrival by "7&7" pilots. The "7&7" pilots worked a schedule typically consisting of seven consecutive days of work followed by seven consecutive days off. NetJets argued that if a "7&7" pilot worked more than seven consecutive days, the pilot's days off could be reduced by the number of days worked over seven. According to NetJets, if a "7&7" pilot arrived

home after midnight of the seventh day of a tour of duty, that pilot was entitled to six rather than seven consecutive days off, even though the pilot had worked into an eighth day of duty. The Union argued that the "7&7" pilots were entitled to receive seven consecutive days off at the end of a tour of duty even if that tour lasted over seven days. It was the Union's position that if a "7&7" pilot arrived home after midnight of the seventh day of consecutive duty, thereby working into an eighth day, the pilot was still entitled to a full seven consecutive days off before starting another tour of duty.

A grievance filed by Pilot Randy Bennett was submitted to the System Board of Adjustment, established under Section 22 of the Agreement. The Board is comprised of four members, with two members selected by NetJets and two members selected by the Union. Agreement, §22.2(a). The Board was unable to reach an agreement on the grievance, and as a result, a fifth member, Arbitrator Colman R. Lalka, was selected pursuant to §22.5 of the agreement to preside over the Board in hearing the dispute. The issues before the arbitrator included the merits of the grievance as well as the procedural question of whether the issue raised was arbitrable, that is, properly a subject of arbitration within the jurisdiction of the Board.

On August 29, 2005, Arbitrator Lalka rendered a decision, attached as Exhibit B to the complaint. Arbitrator Lalka concluded that the matter submitted was arbitrable. He further found that NetJets violated the Agreement by not granting seven consecutive days off to "7&7" pilots who arrived at their gateway or domicile after midnight of the seventh day of a tour of duty. As a remedy,

he ordered that "7&7" pilots who did not receive seven consecutive days off before starting their next tour because they were not granted an additional extended day off following an after-midnight arrival were to receive one extended day payment for each such incident.  This order was made retroactive to March 3, 2000, which was thirty days prior to the filing of the grievance at issue.

On November 21, 2005, NetJets filed the instant action seeking to vacate the arbitrator's award.  On November 23, 2005, the Union filed a complaint in International Brotherhood of Teamsters, Local 1108 v. NetJets Aviation, Inc., Case No. 2:05-cv-1063, seeking to enforce the arbitrator's award.  On March 30, 2006, the magistrate judge issued an order consolidating these cases.

This matter is now before the court on the Union's motion to dismiss NetJet's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted.  A complaint may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232 (1974).  A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).

This case is governed by the provisions of the RLA.  Congress

enacted the RLA "[t]o avoid any interruption to commerce or to the operation of any [air or rail] carrier engaged therein." 42 U.S.C. §151a(1).  The RLA's coverage was extended to air carriers in 1936 by enactment of Title II of the RLA, 45 U.S.C. §§181-184.  Section 184 requires air carriers and their employees, acting through their representatives, to establish system, group, or regional boards of adjustment for the resolution of disputes over the interpretation and application of the parties' collective bargaining agreements. International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 686 (1963); ABX Air, Inc. v. Airline Professionals Ass'n, 266 F.3d 392, 396 (6th Cir. 2001)("ABX I").

The RLA distinguishes between major and minor disputes.  See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 310-11 (1989).  Major disputes involve disagreements over the creation of contractual rights during bargaining for an agreement or to change the terms of an existing agreement, which must be resolved through the collective bargaining process.  See 45 U.S.C. §152, Seventh and §156.  Minor disputes can be resolved by interpreting the terms of the collective bargaining agreement, and include controversies over the meaning or application of an existing contract provision regarding pay, rules or working conditions to a specific situation or omitted case.  ABX I, 266 F.3d at 396.  If discussions involving minor disputes do not lead to a solution, both parties are subject to compulsory and binding arbitration before an adjustment board pursuant to 45 U.S.C. §152, Sixth and §184.  Id.  The adjustment board exercises exclusive jurisdiction over minor disputes.  Airline Professionals Ass'n v. ABX Air, Inc., 274 F.3d 1023, 1028 (6th Cir. 2001)("ABX II").

Judicial review of the adjustment board's decision is limited. ABX II, 274 F.3d at 1028. The decisions of adjustment boards created under the RLA "are subject to a standard of review that is among the narrowest known to the law." Id. at 1030. An award by an adjustment board may only be overturned due to: (1) failure of the board to comply with the requirements of the RLA; (2) failure of the board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. Id.; 45 U.S.C. §153 First (q).

Where an arbitrator's decision fails to draw its essence from the terms of the collective bargaining agreement, the award is beyond the jurisdiction of the arbitrator. ABX II, 274 F.3d at 1030. An arbitrator's award may be overturned for failure to draw its essence from the terms of the collective bargaining agreement only where: (1) the award conflicts with the express terms of the agreement; (2) the award imposes additional requirements that are not expressly provided in the agreement; (3) the award is without rational support or cannot be rationally derived from the terms of the agreement; or (4) the award is based on general considerations of fairness and equity rather than the precise terms of the agreement. Id.

NetJets alleges in its complaint that the arbitrator's award fails to draw its essence form the collective bargaining agreement. NetJets first alleges that the arbitrator incorrectly determined that the matter was arbitrable. Complaint, ¶ 89a. NetJets alleges that no individual or class action grievance was filed claiming a violation of §19.13(a) of the Agreement, the provision relating to "7&7" pilots. NetJets contends that the Bennett grievance upon

5

which the arbitrator based his award was not timely filed, that the arbitrator improperly incorporated the alleged violation of §19.13 into that grievance, since §19.13 was not in existence at the time the grievance was filed, and that the arbitrator imposed requirements concerning the processing of grievances on NetJets which were not contained in the agreement. NetJets argues that in the absence of a timely grievance claiming a violation of §19.13(a), the arbitrator lacked jurisdiction to hear the dispute.

NetJets also alleges that the arbitrator improperly ignored evidence concerning the bargaining history and, in effect, rewrote the collective bargaining agreement by imposing additional requirements on NetJets in the administration of §19.13 of the Agreement. Complaint, ¶ 89b. NetJets alleges that §19.13 contains no language which requires NetJets to provide pilots on the "7&7" schedule with additional days off work as a result of after-midnight arrivals, and that the arbitrator effectively modified the language of §19.13 by imposing such a requirement. Finally, NetJets contends that the remedy imposed by the arbitrator is not rationally derived from the collective bargaining agreement because the arbitrator ordered NetJets to make payments to pilots on the "7&7" schedule retroactively to a date when §19.13 did not exist in the Agreement. Complaint, ¶ 89c. NetJets alleges that the "7&7" language was not included in the Agreement until several months later.

Based on the allegations in NetJet's complaint, and accepting those allegations as true, which this court must do in ruling on a motion to dismiss, the court cannot say that NetJets would be unable to prove any set of facts which would entitle it to relief.

The court also notes that the magistrate judge has established an expedited schedule for the filing of summary judgment motions in this case. Such motions will provide the court with a full record in determining whether the arbitrator's decision is subject to review. Accordingly, the defendants' motion to dismiss (Doc. # 3) is denied.

Date: April 3, 2006                     s\James L. Graham
                                        James L. Graham
                                        United States District Judge